**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| TRISTAR PRODUCTS, INC.<br>(a Florida corporation),<br><br>               Plaintiff,<br><br>  v.<br><br>TELEBRANDS CORP., WHELE LLC d/b/a<br>PERCH, and JEFFREY L. SNOW,<br><br>               Defendants. | No. 3:24-cv-00238-MCR-HTC |

**DEFENDANT JEFFREY L. SNOW'S REPLY MEMORANDUM OF LAW
IN FURTHER SUPPORT OF HIS RULE 11 MOTION**

Defendant Jeffrey L. Snow submits this Reply Memorandum of Law in support of his Motion for sanctions pursuant to FRCP 11 and 28 U.S.C. § 1927 ("Rule 11 Motion").[1]

## PRELIMINARY STATEMENT

In its attempt to avoid sanctions, Fried Frank repeats the claim that resulted in the current jeopardy it faces in the present Rule 11 Motion. The essence of Fried Frank's claim against Mr. Snow is that he and Telebrands failed to inform the PTO of Tristar's litigation against Ragner Technology Corp. ("Ragner" or "RTC") alleging improper termination of Tristar's licenses to the Ragner Patents. Tristar claims this failure constitutes misconduct before the PTO. Recognizing that its claim is facially without merit, Tristar has now offered the declaration of a patent attorney to add a false veneer of "patent law analysis" to its claim. However, the declaration of Dr. Linck submitted with Tristar's opposition is merely an irrelevant distraction.

Fried Frank continues to assert misrepresentations of law and fact even while gradually retreating from provable falsehoods. In its inflammatory complaint, Fried Frank alleged that Telebrands and Snow acted "under the cloak of darkness" to file and prosecute the reexaminations of the Ragner Patents. Now Fried Frank grudgingly concedes that the requests were publicly available (*see* Opp. at 14). However, Fried Frank continues its attempts to mischaracterize what happened in these reexamination proceedings, asserting that Telebrands was not "seriously challenging the validity of the asserted patents" (Opp. at 1) when the record is clear that Telebrands included such "challenges" in its reexamination requests and that the PTO agreed with them by

---

[1] Capitalized terms not otherwise defined herein are defined as in Snow's moving brief (D.E. 62). Tristar's opposition brief is cited herein as "Opp." (D.E. 63).

1

finding substantial new questions of patentability [2] ("SNQs") based on Telebrands' detailed analyses in the requests and ordering the institution of reexamination.[3]

Tristar seeks to ignore the PTO's findings of SNQs and their importance.[4] However, in arguing that the PTO made no determinations of invalidity, Tristar admits that if the PTO had found patent claims to be unpatentable, it would have issued a notice of intent to issue a reexamination certificate (Opp. at 17). That is exactly what the PTO did in this case, making a final determination of unpatentability (35 U.S.C. § 307) and issuing *ex parte* reexamination certificates for all four Ragner Patents. (*See* D.E. 30, Jeffrey L. Snow's Request for Judicial Notice in Support of His Motion to Dismiss ("Snow RJN"). ¶ 1m-p, Ex. 13-16). The PTO cancelled the

---

[2] Patentability concerns the statutory conditions for obtaining a patent, including that the invention is novel and nonobvious in light of the prior art and fully and particularly described. *See* Manual of Patent Examining Procedure ("M.P.E.P.") § 2106 (discussion of patentability).

[3] In its attempt to discredit the reexamination proceedings, which it refers to as a "charade" (Opp. at 16), Tristar contends that "Telebrands could simply have disclaimed the Ragner patents" (*Id*.). *See* M.P.E.P. § 1490 (explaining that statutory disclaimer is a statement in which a patent owner relinquishes legal rights and describing limitations on relinquishing those rights). Significantly, disclaiming a patent is effective prospectively, whereas Telebrands sought to terminate the existing decade-long litigation; that could only be accomplished through the PTO's cancellation of the Ragner Patents, the result of which render the patent infringement claims moot for lack of subject matter jurisdiction. *Fresenius USA, Inc. v. Baxter Int'l, Inc*., 721 F.3d 1330, 1340 (Fed. Cir. 2013) ("[W]hen a claim is cancelled [in reexamination], the patentee loses any cause of action based on that claim, and any pending litigation in which the claims are asserted becomes moot"). Telebrands undertook the more arduous procedure of challenging the patentability of the Ragner Patents, and the PTO confirmed Telebrands' approach when it found SNQs and ordered the reexaminations.

[4] It is simply not true, as Fried Frank and Linck imply, that Telebrands, rather than the PTO, cancelled the claims of the Ragner Patents by filing Patent Owner Statements including proposed amendments. *See* 35 U.S.C. § 305 (patent owner is "permitted to *propose* any amendment to his patent") (emphasis added); 37 C.F.R. § 1.530(d) ("A *proposed* amendment in an *ex parte* or an *inter partes* reexamination proceeding is made by filing a paper *directing* that *proposed* specified changes be made to the patent specification, including the claims . . . . An amendment paper *directing* that *proposed* specified changes be made in a reexamination proceeding may be submitted . . . as part of a patent owner statement . . . .") (emphasis added).

patent claims,[5] with each *ex parte* reexamination certificate stating, "As a result of reexamination, it has been determined that:  Claims [1] – [18] are cancelled."

Although Tristar concedes that anyone, including a third party or the patent owner, can file a request for reexamination, all of its assertions of misconduct before the PTO continue to focus on the irrelevant issue of ownership and the equally irrelevant issue of whether the PTO had notice of Tristar's Florida state court action against Ragner (which Tristar has since voluntarily dismissed with prejudice).[6] Neither supports Tristar's position.

First, as a factual matter, the PTO was made aware of the Florida state action on several occasions during the prosecution of the reexamination proceedings.  Tristar filed papers in each of the reexamination proceedings objecting to the reexaminations, specifically citing the Florida state action and asserting that it had rights to pursue patent infringement claims under the Ragner Patents.[7] (Declaration of Jeffrey L. Snow in Support of Rule 11 Motion for Sanctions ("Snow Dec.") ¶ 9).  In addition, Telebrands filed petitions to expunge Tristar's improper papers, pointing out to the PTO Tristar's status in such litigation as "a terminated, former licensee."  Tristar's claims regarding its alleged rights to pursue patent infringement under the Ragner Patents was further evident through Telebrands' disclosure of the concurrent proceedings with the reexamination requests and the PTO's own litigation searches in each of the reexamination proceedings.  (*See* Snow Dec. ¶ 7 (noting that the docket of the lead case of the Consolidated Cases in the District of

---

[5] *See* M.P.E.P. § 2288 ("The [reexamination] certificate will:  (A) cancel any patent claims determined to be unpatentable").

[6] In each of the reexamination proceedings, the PTO made clear statements that Telebrands' Reexamination Requests, as the patent owner, were *compliant*, i.e., that patent owner Telebrands fully complied with the Patent Office rules and procedures.

[7] While the PTO ultimately expunged the papers *sua sponte* as improperly filed under the PTO's rules (Snow Dec. ¶ 9), the PTO had before it, and could have considered, Tristar's assertions regarding the Florida state action and Tristar's purported rights to pursue patent infringement if the PTO thought it would be proper or useful to do so.

New Jersey, which was included in the PTO's litigation search results, identified Tristar's litigation against Ragner)).

Second, Tristar's Florida state court action was irrelevant to the reexamination of the Ragner Patents because it did not involve any issues of patentability, i.e., "information material to patentability." Instead, Tristar's case against Ragner (to which Telebrands was not a party) merely asserted that Ragner had wrongly terminated Tristar's licenses to the patents. Tristar never asserted that it had any ownership rights in the Ragner Patents themselves, rather, Tristar's "interests" were <u>litigation claims</u> related to the Ragner Patents. Tristar argues that Snow misled the PTO by claiming that Telebrands owned "the entire right, title and interest" in the Ragner Patents, but Tristar's pending rights in <u>litigation claims</u> related to the Ragner Patents had nothing to do with the "right, title, and interest," i.e., ownership, in the patents.[8]

Lastly, of course, Tristar's false assertion that Telebrands failed to notify the PTO of the Florida state action is further undermined by Tristar's voluntary abandonment and dismissal of that action with prejudice, which demonstrates both that the existence of the action is immaterial and also that Tristar's "interest" in the Ragner Patents was never a valid ownership claim in the first place.

---

[8] Telebrands properly established in the reexamination proceedings that it was the patent owner of the Ragner Patents. The reexamination files include Patent Assignment Abstracts of Title demonstrating the chain of title and referencing the recorded Assignment from Ragner to Telebrands. In the Assignment, Ragner stated that it was the owner of the entire rights, titles, and interests in and to the Ragner Patents and then assigned those entire rights, titles, and interests owned by Ragner to Telebrands. (Snow RJN, ¶ 1b, Ex. 2).

4

# ARGUMENT[9]

**TELEBRANDS AND SNOW HAD NO DUTY TO DISCLOSE THE FLORIDA STATE ACTION TO THE PTO.**

Because the complaint fails, on its face, to allege a duty to disclose the substance or existence of the Florida state court action, Tristar attempts to manufacture one in the declaration of Dr. Linck. Linck opines as follows:

> 169. More specifically, Mr. Snow and Telebrands should have informed the examiner of the then-pending litigation in which Tristar was disputing the effectiveness of RTC's purported termination of Tristar's exclusive licenses.
>
> 170. Mr. Snow and Telebrands should also have informed the examiner that any rights in the subject patents Telebrands did acquire were encumbered by at least Tristar's rights to recover for past infringement of those patents that were already being asserted against Telebrands in pending district court litigation. (*See* Ex. 2 at 1.)

Linck then asserts that "such facts and documentary evidence, at minimum, were material . . . and that materiality should be presumed" (¶171).

However, by Linck's own admission, the duty of disclosure relates to information "material to patentability" (¶¶ 13 & 20). Again, nothing in the Florida state court action relates to the "patentability" of the Ragner Patents, nor does anything else raised or argued in Linck's declaration. Moreover, Linck has ignored M.P.E.P. § 2280, which provides as follows (emphasis added):

> An attorney, agent or patent owner who receives information has **no duty to submit such information if it is not material to patentability in the reexamination proceeding**. See 37 CFR 1.555 (b) for the definition of "material to patentability."

37 C.F.R. § 1.555(b) itself provides (emphasis added):

> Information material to patentability in *ex parte* reexamination and *inter partes* reexamination proceedings:

---

[9] Citations and quotations omitted and emphases added unless otherwise noted.

5

> (b) Under this section, information is material to patentability in a reexamination proceeding when it is not cumulative to information of record or being made of record in the reexamination proceeding, and
>> (1) It is a patent or printed publication that establishes, by itself or in combination with other patents or printed publications, **a prima facie case of <u>unpatentability</u> of a claim**; or
>> (2) It refutes, or is inconsistent with, a position the patent owner takes in:
>>> (i) **Opposing an argument of <u>unpatentability</u> relied on by the Office**, or
>>> (ii) **Asserting an argument of <u>patentability</u>.**

Accordingly, Linck has (presumably intentionally) misapplied the relevant disclosure standard to suggest misconduct associated with an alleged failure to disclose the Florida state action where no such misconduct remotely exists.

In addition, in her evaluation of Mr. Snow's conduct, Linck misstates the status of the patents in question, asserting that the patent claims were "presumed valid." In fact, there is no presumption of validity when claims are in reexamination. *See* M.P.E.P. § 2286 (citing *In Re Etter*, 756 F.2d 852 (Fed. Cir. 1985) (The 35 U.S.C. 282 presumption of patent validity does not apply in reexamination proceedings.)).

Although there might be situations in which expert testimony relating to complex issues regarding patentability or other technological matters might be appropriate, this is not one. *See Brandt v. Schal Assoc., Inc.*, 121 F.R.D. 368, 389-90 (N.D. Ill. 1988) ("While there may be circumstances in which expert testimony would be useful in determining whether the requirements of Rule 11 have been met, this is not one of them. Whether Campbell had a reasonable basis for filing the complaint is a question for this Court, and the opinion of an attorney (however 'expert' he may be thought to be) carries no real evidentiary weight in this case."). Instead, Tristar's submission of Linck's declaration is a transparent attempt to submit additional, impermissible

briefing to establish a duty of disclosure in a situation where one does not exist and to state an unsupportable conclusion based on an incorrect legal standard inapplicable to this action.[10] Aside from being improper, Tristar's effort to evade sanctions fails for all of the reasons set forth herein. Therefore, Fried Frank should be sanctioned for its frivolous pursuit to punish Snow for successfully representing his client, Telebrands.

## CONCLUSION

For the foregoing reasons and those set forth in his moving brief, Defendant Snow respectfully requests: (i) an award of appropriate sanctions against Tristar pursuant to FRCP 11; (ii) an award of appropriate sanctions against Fried Frank pursuant to FRCP 11 and 28 U.S.C. § 1927; and (iii) such other and further relief as the Court deems just and proper.

Dated: January 10, 2025
New York, New York

**PRYOR CASHMAN LLP**

By: *James A. Janowitz*
James A. Janowitz (*pro hac vice*)
Benjamin S. Akley (*pro hac vice*)
Brittany M. Pagnotta (*pro hac vice*)
jjanowitz@pryorcashman.com
bakley@pryorcashman.com
bpagnotta@pryorcashman.com
7 Times Square
New York, New York 10036
Tel: (212) 421-4100

---

[10] *See G-I Holdings, Inc. v. Baron & Budd,* No. 01-0216, 2002 U.S. Dist. LEXIS 15443, at *36-*37 (S.D.N.Y. Aug. 16, 2022) ("The entirety of Joseph's report, and Paragraphs 11 to 13 of Vairo's report, will be stricken as they contain impermissible legal conclusions. The stricken portions may be considered, at most, as the equivalent of a supplement brief.") (citing *Brandt*, 121 F.R.D. at 390).

**AUSLEY MCMULLEN**

*Martin B. Sipple*
Martin B. Sipple
msipple@ausley.com
123 South Calhoun Street
Tallahassee, Florida 32301
Tel: (850) 224-9115

*Attorneys for Defendant Jeffrey L. Snow*

**CERTIFICATE OF WORD COUNT**

Pursuant to Local Rule 7.1(F), the undersigned counsel certifies that, according to Microsoft Word, the word-processing system used to prepare this Motion, there are **2198** total words contained within this Reply Memorandum.

*Martin B. Sipple*
Martin B. Sipple

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing was served via the Court's Electronic Case Filing ("ECF") system on all counsel of record on the 10th day of January, 2025.

*Martin B. Sipple*
Attorney