UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

| | |
|---|---|
| TRISTAR PRODUCTS, INC., ) <br> ) <br> *Plaintiff,* ) <br> ) <br> v. ) <br> ) <br> TELEBRANDS CORPORATION, ) <br> WHELE LLC d/b/a PERCH, and ) <br> JEFFREY L. SNOW, ) <br> ) <br> *Defendants.* ) <br> ) | Case No.: 3:24-cv-00238-MCR-HTC |

**PLAINTIFF TRISTAR PRODUCTS, INC.'S SUR-REPLY
IN RESPONSE TO DEFENDANT TELEBRANDS CORP.'S
REPLY MEMORANDUM IN SUPPORT OF ITS RULE 11 MOTION**

Pursuant to the Court's March 26, 2025 Order (ECF No. 79), Plaintiff Tristar Products, Inc. ("Tristar") submits this sur-reply in response to Defendant Telebrands Corp.'s ("Telebrands") Reply Memorandum in Support of Its Motion for Sanctions Pursuant to Federal Rule of Civil Procedure 11 (ECF No. 76 ("Reply")) and in further support of Tristar's Opposition to Telebrands' Rule 11 Motion (ECF No. 72 ("Opp.")).

1

## PRELIMINARY STATEMENT

If it was clear that Tristar and its counsel had no good faith basis to present Tristar's claims, the volume of paper consumed by the briefing (and rebriefing) of motions to dismiss and motions for sanctions would be a fraction of what has already been filed. If Tristar's claims were not reasonably grounded in law and fact, Telebrands would not need to raise new arguments in a reply brief after multiple rounds of briefing have already been completed. But here we are.

As this Court attempts to wade through the morass, Tristar anticipates that some factual and legal issues will at this point be murky. This should not be surprising, as many underlying facts remain uniquely known to Defendants—discovery has not yet begun. But two things should be clear: (1) Telebrands is at the center of a carefully orchestrated and unprecedented scheme to deprive Tristar of the benefits of its exclusive licenses; and (2) Telebrands does not want the underlying facts to come to light.

Throughout the parties' briefing, Defendants have used the early stages of these proceedings as a sword and a shield. Defendants blame Tristar for pleading certain facts "upon information and belief" and for not knowing the precise terms of Telebrands' agreements with non-party Ragner Technology Corporation ("RTC"), *see* Reply at 8–9, but at the same time, Defendants have done everything they can to prevent disclosure of this information to Tristar and to the courts.

Recently, in what have been referred to as the "Consolidated Cases," Judge Evelyn Padin (D.N.J.) denied Telebrands' appeal of Magistrate Judge Hammer's Order requiring Telebrands to produce (in those actions) the October 2022 RTC-Telebrands Agreement and related documentation. Mem. Order, *Ragner Tech. Corp. et al.*, Nos. 15-8185, 16-3474 (D.N.J. Mar. 17, 2025), ECF Nos. 322, 294 (attached hereto as Ex. A). But Telebrands' appeal of a similar order by Magistrate Judge Hammer in what has been referred to as the "Blue Gentian Case" remains pending. And discovery in this matter has not yet begun.

Tristar remains confident that, when the truth is brought into the light in this case, all will recognize that its claims not only have merit but are, in fact, meritorious. Telebrands' motion should be denied. Certainly, it cannot be granted without the benefit of discovery.

## ARGUMENT

### I. Tristar Explicitly Pled Its Residual License Rights

In its Reply, Telebrands picks at a footnote in Tristar's Opposition. (Reply at 5–7.) But neither Tristar's factual allegations nor its legal theories are new.

Tristar alleges that its exclusive license rights remain intact and thus that the purported Ragner-Telebrands Assignment was void *ab initio*. (*See* Compl. ¶¶ 50, 78; ECF No. 44 at 3–4.) Tristar further alleges that, even if Ragner's termination of Tristar's exclusive rights was effective, Tristar **and Ragner** retained the right to sue

3

Telebrands for its past infringement. (Compl. ¶ 86). As evidence of this residual right in and to the Asserted Ragner Patents, Tristar's allegations point both to RTC's post-termination duty to assist in pursuing existing infringement claims (*id.* ¶ 47) and to RTC's in-fact participation in such suits post-dating the purported assignments (*id.* ¶¶ 88, 101). Tristar's footnote did no more than highlight the logical fallacy of Telebrands' position.

Tristar's arguments in opposition were thus not new; but Telebrands' argument in reply is. After many months and hundreds of pages of briefing, **Telebrands introduces a new legal theory** concerning "personal [and] real property" rights and argues that "Tristar's 'right to recover' infringement damages is no patent right at all but rather a mere contractual term emanating from the since-terminated licenses from Ragner, not from the patents."[1] (Reply at 6–7.) ***This*** is an entirely new argument in Telebrands' reply brief and should be disregarded. *See, e.g.*, *Brown v. CitiMortg., Inc.*, 817 F. Supp. 2d 1328, 1332 (S.D. Ala. 2011) ("New arguments presented in reply briefs are generally not considered by federal courts." (citing *Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1338, 1342 (11th Cir. 2005)); *Foley v. Wells Fargo Bank, N.A.*, 849 F. Supp. 2d 1345, 1349 (S.D. Fla. 2012) ("Because it

---

[1] This is, unsurprisingly, not Telebrands' first attempt to interpose new legal authority. (*See* Opp. at 27 & n.12.)

is improper for Defendant to raise this new argument in its Reply brief, the argument will not be considered.").

In brief, however, Telebrands is wrong. The Federal Circuit has held that "*[w]here the licensor retains a right to sue accused infringers, that right often precludes a finding that all substantial rights were transferred to the licensee*." *Alfred E. Mann Found. For Sci. Rsch. v. Cochlear Corp.*, 604 F.3d 1354, 1361 (Fed. Cir. 2010) (emphasis added). So, too, here. If Telebrands agrees that RTC retained a right to sue it for its past acts of infringement (as Telebrands and Mr. Snow both appear to concede), that precludes a finding that all substantial rights were transferred to Telebrands—and confirms that Telebrands misrepresented the extent of its interest to the Patent Office.[2]

This is entirely consistent with Tristar's Complaint.

Accordingly, Telebrands' new legal theory is not only incorrect under Federal Circuit precedent, but it also improper and should be disregarded.

## II.   Telebrands Cannot Use Confidentiality as a Sword and a Shield

Telebrands next wrongly suggests that Tristar and its counsel "admit," "for the first time," that they "*never attempted to secure and review the discovery*

---

[2]   By contrast, Telebrands' ownership interest would only be complete if RTC did not retain a right to sue Telebrands. But in that case, RTC would have lost standing to maintain suit against Telebrands—*i.e.*, the Consolidated Cases should have been dismissed as moot. That is not what happened here; Telebrands has never argued otherwise.

*uniquely produced in the [Florida Ragner] Action.*" (Reply at 3, 8 (emphasis in original).) But as Tristar has explained throughout the parties' voluminous briefing, Telebrands has resisted production of the October 2022 Ragner-Telebrands Agreement at every turn. (*See, e.g.*, Compl. ¶¶ 75–76; ECF No. 44 at 15; ECF Nos. 44-8, 44-9; ECF No. 59 at 7–8; Opp. at 5, 19.) And as Tristar explained in its Opposition—and Telebrands does not dispute—***discovery in the Florida Ragner Action was subject to a confidentiality order***.[3] (Opp. at 24.) Telebrands cannot use confidentiality as a sword—to malign Tristar for not having certain information—and a shield—to prevent Tristar from obtaining it.[4]

---

[3]    Although Telebrands attempts to argue that "Tristar and its counsel made no effort to retrieve and review this discovery to assess the merits of a potential case here" (Reply at 3), Telebrands knows that the Florida Ragner Action was in the midst of discovery when Tristar filed its Complaint here. (*See* ECF No. 72-5; *see also JAWHBS LLC v. Arevalo*, No. 15-CV-24176, 2017 WL 11681024, at *1 (S.D. Fla. Aug. 18, 2017), *report and recommendation adopted*, No. 15-24176-CIV, 2017 WL 11681022 (S.D. Fla. Sept. 25, 2017) ("With respect to the first prong, [whether the party's claims are objectively frivolous,] the court is to employ an objective standard and examine the reasonableness of the conduct under the circumstances in light of what was reasonable ***at the time of filing***." (emphasis added)).).

[4]    In her March 17, 2025 Order, Judge Padin (D.N.J.) criticized Telebrands for exactly this: "[T]he Court agrees that the Agreements are relevant given Telebrands's seeming desire to use them as both a sword and a shield. The Agreements are relevant enough, Telebrands says, to demonstrate Tristar's purported lack of standing, but irrelevant because the Agreements deprived Tristar of standing. Telebrands cannot have it both ways." (Ex. A at 7.)

Moreover, the significance of the October 2022 Ragner-Telebrands Agreement is apparent on the face of the purported assignment on which Telebrands relies. As alleged in Tristar's Complaint, that purported assignment *on its face* assigns only "available" rights to sue for past damages and incorporates by reference the October 2022 Ragner-Telebrands Agreement. (Compl. ¶ 85.)

Accordingly, absolutely nothing here can be remotely construed as "reveal[ing] a textbook Rule 11 violation." (Reply at 9.) Rather, it is telling that Telebrands suggests that Tristar's "new" admission is that its counsel in the Florida Ragner Action did not break its confidentially obligations.[5]

### III. Tristar Does Not Offer New Allegations Regarding Telebrands' Misdeeds

Contrary to Telebrands' assertion (Reply at 10–11 & n.5), Tristar's Opposition reiterates the *same allegations* included in its Complaint concerning Telebrands' and Mr. Snow's wrongful scheme to cause the cancelation of the claims of the Asserted Ragner Patents.[6] (*See* Compl. ¶¶ 94–114; Opp. at 7–10.) Moreover,

---

[5] Telebrands' contention that the Florida Ragner Action's dismissal "plainly has a *res judicata* impact on this case" is unavailing. (Reply at 3 n.1 (emphasis in original).) Telebrands' effort to recapitulate its motion to dismiss should not be considered as the parties have already briefed extensively why the dismissal does not foreclose Tristar's claims. (*See* ECF No. 44 at 5 n.3; ECF No. 45 at 5 n.2; ECF No. 59 at 5–8; ECF No. 60 at 6–10; ECF No. 63 at 21; Opp. at 24–26.)

[6] Telebrands' claim that Tristar and its counsel seek "to transform their own misconduct before the PTO into Telebrands' wrongdoing" (Reply at 11) is another attempt by Telebrands that, in modern parlance, is referred to as "gaslighting."

7

Telebrands' suggestion that it "simply" made use of "public filing[s]" is yet another clear attempt to distract from the fact that Mr. Snow, on behalf and in concert with Telebrands, made knowing misrepresentations to the Patent Office.[7] (Compl. ¶¶ 94–114; ECF No. 60 at 10–11; ECF No. 63 at 6–8.) Accordingly, in no way does Tristar's Opposition reiterate anything other than what is provided for in its Complaint.

### A. Telebrands' Remaining Arguments Have Already Been Addressed

Finally, Telebrands argues that Tristar and its counsel make "new" false or misleading claims related to its conspiracy, tortious interference, fraud, and civil RICO claims. (Reply at 11–13.) Once again, Telebrands is improperly using its Reply—in the same fashion as its Rule 11 motion—to rehash arguments that have been fully briefed as part of Defendants' motions (plural) to dismiss.

---

Indeed, Telebrands' attempt to compare Tristar informing the Patent Office of Telebrands' egregious conduct to a situation where the Office received multiple improper third-party submissions (many of which were unsigned), including at least a half dozen unsolicited phone calls to the patent examiner, is especially unavailing. (*See* Reply at 6 n.5; Levin Decl., Ex. 2 at 3–6.)

[7]   This unprecedented behavior is exactly why Tristar's opposition to Mr. Snow's motion for sanctions provided therewith the Declaration of Nancy Linck, a former Administrative Patent Judge on the Board of Patent Appeals and Interferences and former Solicitor of the Patent Office, who opines that, if the facts of this case are ultimately established to be as alleged, Mr. Snow, on behalf and in concert with Telebrands, engaged in "egregious misconduct." (ECF No. 63-4 ¶ 172.)

*First*, Telebrands argues that Tristar "continue[s] to contort Telebrands' argument regarding the chronology of events" and "has failed to provide a sufficient bas[e]s" for its conspiracy and tortious interference claims. (Reply at 10–11.) Both contentions are without merit. Tristar's Opposition is entirely consistent with the allegations set forth in the Complaint related to Telebrands' (and Perch's) interference with Tristar's exclusive licenses. (Compl. ¶¶ 50–65.) Further, contrary to Telebrands' rehashed contentions, Tristar has fully addressed why its alleged claims of conspiracy and tortious interference against Telebrands is sufficient. (*See* ECF No. 44 at 12–18; ECF No. 59 at 6–9; Opp. at 20–21.)

*Second*, Telebrands wrongly suggests that Tristar and its counsel "take inconsistent positions . . . against different defendants" for its fraud claims. (Reply at 12.) There is no inconsistency in either Tristar's Opposition or its opposition to Mr. Snow's motion to dismiss. (*See* Opp. at 22–23; ECF No. 45 at 22–26; *see also* ECF No. 59 at 9; ECF No. 63 at 26–27.) Rather, Telebrands attempts to conflate different parties making different fraudulent statements to different actors. Moreover, Telebrands' argument that "Tristar did not need to rely on anyone else to review the publicly-available Assignment" conveniently elides over the fact that the agreement was fraudulently obtained based on misrepresentations to RTC.[8] (Reply

---

[8]  As set forth in Tristar's opposition to Mr. Snow's motion for sanctions, this "publicly-available" argument is without merit. (ECF No. 63 at 14.) Given that Telebrands recorded the assignment shortly before Mr. Snow filed the reexamination

9

at 12.) Thus, the only real "irony" lies in Telebrands' attempt to suggest Tristar has introduced "new" claims in an effort to recapitulate its motion to dismiss. (*Id.* at 13.)

*Lastly*, Telebrands contends that Tristar and its counsel "***now allege*** that Telebrands' 'stated intention to seek attorneys' fees from Tristar'" cannot establish Tristar's civil RICO claim. (Reply at 13 (emphasis added).) As set forth in Tristar's Opposition and its opposition to Telebrands' motion to dismiss, Tristar adequately alleges an open-ended pattern of racketeering activity as Telebrands and Mr. Snow continue to pose an ongoing threat in light of Telebrands' continued wrongful prosecution of the patent infringement claims ***and*** its stated intention to seek attorneys' fees from Tristar in the District of New Jersey. (*See* Opp. at 23–24; ECF No. 44 at 28; *see also* ECF No. 45 at 32.) Accordingly, Telebrands' attempt to rehash its motion to dismiss should not be considered.

## CONCLUSION

For the foregoing reasons, Tristar respectfully requests that the Court deny Telebrands' motion for sanctions.

---

requests, the ***only*** person the Patent Office would have notified was Mr. Snow—the correspondent of record. (*Id.* at 14–15.)

DATED:  March 31, 2025        FRIED, FRANK, HARRIS, SHRIVER
                & JACOBSON LLP

            By: /s/ Paul M. Schoenhard
              FRANCISCO RAMOS, JR., ESQUIRE
              Florida Bar No. 114766
              (framos@goldbergsegalla.com)
              GOLDBERG SEGALLA, LLP
              801 Brickell Avenue | 8th Floor
              Miami, FL 33131
              Telephone: (786) 814-4810

              Nicole M. Jantzi (*Pro Hac Vice*)
              (nicole.jantzi@friedfrank.com)
              Paul M. Schoenhard (*Pro Hac Vice*)
              (paul.schoenhard@friedfrank.com)
              FRIED, FRANK, HARRIS, SHRIVER
               & JACOBSON LLP
              801 17th Street NW
              Washington, DC 20006
              Telephone: (202) 639-7265

              *Attorneys for Plaintiff Tristar Products, Inc.*

## CERTIFICATE OF WORD COUNT

      Pursuant to Local Rule 7.1(F), I hereby certify that, according to the word processing software used to prepare the foregoing opposition brief, this brief contains a total of 2,342 words.


Dated: March 31, 2025                                              /s/ Paul M. Schoenhard
                                                                                                                Paul M. Schoenhard

## CERTIFICATE OF SERVICE

      I hereby certify that a copy of the foregoing document was filed through the electronic filing system and served electronically to the registered participants as identified on the Notice of Electronic Filing.


Dated: March 31, 2025                          /s/ Tanya Cooper
                                                                        Tanya Cooper